IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**HERMAN L. BLACK,**

    Plaintiff,

v.    Civil Action No. **3:16CV349**

**JOSEPH A. HIGGS, JR.,** *et al.*,

    Defendants.

## MEMORANDUM OPINION

Herman L. Black, a Virginia inmate with a hearing impairment, filed this 42 U.S.C. § 1983 action.[1] The matter proceeds on Mr. Black's Particularized Complaint ("Complaint," ECF No. 15.) Mr. Black names Joseph A. Higgs and Barbara Meade as Defendants.[2] By Memorandum Opinion and Order entered on September 13, 2017, the Court dismissed Mr. Black's request for injunctive relief, but otherwise denied Defendants' Motions to Dismiss. *Black v. Higgs*, No. 3:16CV349, 2017 WL 4052375, at *2, *4 (E.D. Va. Sept. 13, 2017). In that Memorandum Opinion, the Court disabused Defendants of the notion that their refusal to supply a hearing aid could not give rise to an Eighth Amendment claim. *See id.* at *4–5.

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

42 U.S.C. § 1983.

[2] Higgs is the Superintendent of the Rappahannock Regional Jail ("RRJ"). Meade is a nurse at RRJ.

Defendants now have moved for summary judgment. Without distinguishing any of the substantial authority cited in the September 13, 2017 Memorandum Opinion, Defendants inexplicably again insist that the failure to provide a hearing aid cannot support an Eighth Amendment claim. For the reasons set forth below, the Motion for Summary Judgment (ECF No. 53) will be DENIED.

## I. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)). In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere "*scintilla* of evidence" will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not

2

whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

In support of their Motion for Summary Judgment, Defendants have submitted the affidavit of Barbara Meade ("Meade Aff.," ECF No. 54–1, at 1–3), and copies of Mr. Black's medical records and correspondence with RRJ officials (ECF No. 54–1, at 4–15).[3] Mr. Black has submitted a sworn Response to the Motion for Summary Judgment (ECF No. 56). In light of the foregoing submissions and principles, the following facts are established for purposes of the Motion for Summary Judgment.

## II. Summary of Undisputed Facts

At all times relevant to this action, Barbara Meade served as the Health Service Administrator at RRJ. (*See* Meade Aff. ¶ 2.) In December of 2015, Mr. Black was incarcerated in RRJ. (*See id.* ¶¶ 4, 7.)[4] "On December 2, 2015, Mr. Black was seen by an outside optometrist." (*Id.*) "[T]he optometrist assessed Mr. Black as having hearing loss and recommended further evaluation with a hearing specialist." (*Id.* ¶ 8.) RRJ medical staff scheduled Mr. Black to be seen by a hearing specialist on February 26, 2016. (*Id.* ¶ 9.) The hearing specialist concluded that Mr. Black had "severe-profound hearing loss" and "bilateral sensorineural hearing loss." (ECF No. 54–1, at 8.) The specialist further noted Mr. Black had

---

[3] The Court employs the pagination assigned to these submissions by CM/ECF docketing system. The Court corrects the capitalization and punctuation in the quotations from the parties' submissions.

[4] The Court omits any second-level citation for Meade's Affidavit.

3

"trouble hearing in general, especially speech." (*Id.*) The specialist concluded that Mr. Black "would benefit" from hearing aids. (*Id.*)

"Between March 14, 2016 and March 24, 2016, Mr. Black submitted six Medical Request Forms regarding his problems hearing and [the possibility] of obtaining hearing aids." (Meade Aff. ¶ 14.) "In response to those Medical Request Forms, Mr. Black was informed that the hearing specialist did not accept insurance for the hearing aids and that RRJ was still trying to work with the hearing specialist, as well as the Department of Corrections ('DOC'), to determine available, reasonable options." (*Id.* ¶ 15.) In one response, Meade informed Mr. Black that, "[W]e are attempting to work with [the] audiologist. . . . RRJ is responsible for medical care required to sustain life and not responsible for pre-existing conditions such as hearing." (ECF No. 54–1, at 13.) On April 4, 2016, RRJ was eventually told that the least expensive option for hearing aids would cost $3950.00. (Meade Aff. ¶¶ 16–17.)

Ultimately RRJ declined to provide the hearing aids. Meade and Higgs concluded that the cost of the hearing aids outweighed the benefit to Mr. Black. (*Id.* ¶ 18.) In reaching that conclusion:

> RRJ weighed the cost of the treatment with the fact that: (1) the hearing specialist did not indicate that hearing aids would cure Mr. Black's condition; (2) the hearing specialist did not indicate that hearing aids would prevent Mr. Black's condition from worsening; (3) the hearing specialist did not indicate . . . that the hearing aids would do anything other than manage Mr. Black's trouble hearing; (5) there was no indication that Mr. Black's condition was causing him pain; and, (6) there was no objective indication that Mr. Black's condition was posing an immediate safety concern.

(*Id.* (incorrect page numbering in original).) RRJ, however, provided Mr. Black with the option to purchase the hearing aids. (ECF No. 1–1, at 1.)

On May 13, 2016, Mr. Black wrote a grievance appeal to Superintendent Higgs wherein he complained about the failure to provide the prescribed hearing aids. (*Id.* at 8.)

4

On September 9, 2016, Mr. Black was injured by an officer of RRJ. (Resp. 4, ECF No. 56.) Mr. Black claims that the injuries occurred because he did not hear the officer enter his cell. (*Id.*)

On May 1, 2017, Mr. Black was transferred from RRJ to the Virginia Department of Corrections, where he currently remains. (ECF Nos. 39, 48.)

### III. Analysis

To survive summary judgment on an Eighth Amendment claim, an inmate must demonstrate that "the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298–300 (1991)). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

When an inmate challenges his conditions of confinement, he or she must show "(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) (internal citation omitted) (citing *Wilson*, 501 U.S. at 301–03). Under the objective prong for an Eighth Amendment claim challenging the conditions of his or her confinement, the inmate must demonstrate that the deprivation complained of was extreme and amounted to more than the

5

"routine discomfort" that is "part of the penalty that criminal offenders pay for their offenses against society." *Strickler v. Waters*, 989 F.2d 1375, 1380 n.3 (4th Cir. 1993) (quoting *Hudson*, 503 U.S. at 9). The resulting harm to the inmate is particularly pertinent in assessing whether a distasteful condition was sufficiently extreme to constitute an unconstitutional infliction of punishment. *Id.* at 1381. Thus, "[i]f a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment." *Id.*

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his or her person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837; *Rich v. Bruce*, 129 F.3d 336, 340 (4th Cir. 1997)). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to demonstrate that "the official in question subjectively recognized a substantial risk of harm" and "that his [or her] actions were 'inappropriate in light of that

6

risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

A. **Serious Medical Need**

As the Court previously explained to Defendants in denying their Motions to Dismiss, *see Black v. Higgs*, No. 3:16CV349, 2017 WL 4052375, at *3 (E.D. Va. Sept. 13, 2017), the failure to provide basic corrective devices may amount to deliberate indifference to a serious medical need. *See Newman v. Alabama*, 503 F.2d 1320, 1331 (5th Cir. 1974) (noting that a prison's alleged failure to provide "eyeglasses and prosthetic devices" may contribute to an Eighth Amendment claim). The United States Court of Appeals for the Fourth Circuit has held that "under [the] appropriate circumstances the refusal to supply a hearing aid to a convict could constitute deliberate indifference to a serious medical need." *Large v. Wash. Cty. Det. Ctr.*, No. 90–6610, 1990 WL 153978, at *2 (4th Cir. Oct. 16, 1990). This is so because "[t]he ability to hear is a basic human need materially affecting daily activity[,] and a substantial hearing impairment plainly requires medical treatment by a physician." *Gilmore v. Hodges*, 738 F.3d 266, 275 (11th Cir. 2013) (holding that the denial of a hearing aid to an inmate could form the basis of an Eighth Amendment claim).

Whether an inmate has a serious medical need for a hearing aid turns on the severity of an inmate's hearing impairment and the capacity of a hearing aid to ameliorate that impairment. *Id.* at 276.[5] Here, the record reflects that Mr. Black suffers from a "severe-profound hearing loss" and that an audiologist concluded that Mr. Black "would benefit" from a hearing aid. (ECF

---

[5] If an inmate's hearing disorder is so profound that he could not benefit from a hearing aid, the inmate's jailor could not be faulted for providing a hearing aid. *Cf. Jones v. McRee*, No. 4:15-3273-RMG, 2016 WL 4967765, at *2 (D.S.C. Sept. 16, 2016) (observing that a failure to cure an incurable medical condition does not violate the Eighth Amendment). Of course, that is not the case here. The hearing specialist concluded that Mr. Black "would benefit" from hearing aids. (ECF No. 54–1, at 8.)

7

No. 54–1, at 8.) That evidence is sufficient at this stage to demonstrate that Mr. Black has a serious medical need for a hearing aid. *Gilmore*, 738 F.3d at 276. ("Substantial hearing loss that can be remedied by a hearing aid can present an objectively serious medical need.")

### B. Deliberate Indifference

Next, Defendants contend that Mr. Black has failed to demonstrate that they acted with deliberate indifference. In support of this assertion, Defendants argue, inexplicably, that, "[t]here is no evidence in this case that Mr. Black's sensorineural hearing loss, if left untreated by hearing aids, would result in a life-long handicap, permanent loss, or a risk to Mr. Black's safety." (ECF No. 54, at 6 (citation omitted).) This argument is mere sophistry. Although Defendants' actions are not the initial cause of Mr. Black's hearing problems, the record reflects that Mr. Black is handicapped with a severe inability to hear. That loss will continue for the rest of his life unless he is provided with hearing aids. Moreover, courts readily acknowledge that severe hearing loss poses a risk to an inmate's safety. Mr. Black's

> evidence allows inferences that he could have had trouble hearing a fire or other alarm, responding to commands issued by guards, and reacting to a fight behind him or to prisoners threatening his safety. Much like the inability to see, an inmate's inability to hear may render him exceedingly vulnerable to danger and harm from his unperceived surroundings.

*Gilmore*, 738 F.3d at 275–76 (citing *Koehl v. Dalsheim*, 85 F.3d 86, 87–88 (2d Cir. 1996)).

A delay or denial of treatment for "non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citation omitted). Here, the record reflects that, for at least a full year, both Defendants knew that Mr. Black required hearing aids to ameliorate his severe hearing loss. *See Gilmore*, 738 F.3d at 276 ("It takes no great leap of logic to suggest that nearly two years of isolation caused by untreated hearing loss

8

could do serious harm to physical and mental health."). Nevertheless, they refused to provide the same. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 830 (7th Cir. 2009) ("[T]he turning of a blind eye to the legitimate medical needs of a prisoner-patient . . . can constitute a violation of the Eighth Amendment."). Such evidence is sufficient for a reasonable juror to conclude Defendants acted with deliberate indifference to Mr. Black's serious medical need. *See Arnett*, 658 F.3d at 753.

Defendants counter that they did not act with deliberate indifference because they determined that "financial realities outweighed obtaining hearing aids." (ECF No. 54, at 6 (citing *Winslow v. Prison Health Servs.*, 406 F. App'x 671, 675–76 (3d Cir. 2011)). In evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103–04); *Kersh v. Bounds*, 501 F.2d 585, 589 (4th Cir. 1974) ("It may not be seriously contended that any prisoner detained for however short a period is entitled to have all his needed elective medical care performed while in custody . . . ."). Nevertheless, Defendants argument in this regard is woefully undeveloped.

In *Winslow*, the only case Defendants cite to support this argument, "there [was] some record evidence suggesting that Defendants considered the cost of [the plaintiff's] treatment, among other factors, in declining to order surgery [for the plaintiff's hernia]." *Winslow*, 406 F. App'x at 675. Nevertheless, "the record [was] equally clear that [the defendants] did not focus exclusively[,] or even predominantly[,] on cost and that the treatment that they ordered was consistent with their professional judgment." *Id.* In that context, the United States Court of Appeals for the Third Circuit stated that the plaintiff "does not have a constitutional right to

9

unlimited medical care of his choosing, free from all considerations of cost." *Id.* at 675–76. Here, by contrast, the record indicates that the predominate factor in Defendants' decision to deny hearing aids to Mr. Black was cost.

The United States Court of Appeals for the Seventh Circuit has observed that, "it is difficult to generalize about the civilized minimum of public concern necessary for the health of prisoners except to observe that this civilized minimum is a function both of objective need and cost." *Gil v. Reed*, 381 F.3d 649, 662 (7th Cir. 2004) (citing *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999)). "The lower the cost, the less need has to be shown," and conversely, the higher the cost the greater the need. *Id.* (citing *Ralston*, 167 F.3d at 1162). "The balancing of the need against the cost is intrinsically a question of fact." *Watson v. GEO Corp.*, No. CIV–07–1320–C, 2009 WL 223368, at *6 (W.D. Okla. Jan. 29, 2009) (citing *Boswell v. Cty. of Sherburne*, 849 F.2d 1117, 1123 (8th Cir. 1988)).

On the record before the Court, a reasonable trier of fact could conclude that Defendants' failure to provide Mr. Black a hearing aid for over a year amounted to deliberate indifference. *See Gilmore*, 738 F.3d at 277; *Wheeler v. Butler*, 209 F. App'x 14, 15 (2d Cir. 2006) (holding that where a prisoner alleged that he had a severe hearing impairment that had been classified by the prison as a physical handicap, and the prison had confiscated and never returned his hearing aids, the district court erred in granting summary judgment to defendants on the prisoner's Eighth Amendment claim); *Taylor v. Wexford Med.*, No. TDC–15–2395, 2017 WL 1194177, at *7 (D. Md. Mar. 30, 2017) (denying defendants' motion for summary judgment where defendants' delays and inaction cause inmate to spend over a year without a functioning hearing aid). Accordingly, Defendants are not entitled to summary judgment with respect to the merits of Mr. Black's Eighth Amendment claim.

### C. Qualified Immunity

Defendants also move to dismiss on the ground of qualified immunity. Contrary to Defendants' approach to briefing, "[a] defendant invoking qualified immunity must do more than mention its existence and demand dismissal of the suit." *Fisher v. Neale*, No. 3:10CV486–HEH, 2010 WL 3603495, at *3 (E.D. Va. Sept. 8, 2010). Rather,

> The defendant must (1) identify the specific right allegedly violated "at the proper level of particularity," *Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007); (2) brief, with full supporting authority, why the right was not so clearly established as to put a reasonable official on notice of any legal obligations; and (3) describe with particularity the factual basis supporting the assertion that a reasonable official in the defendant's situation would have believed his or her conduct was lawful.

*Id.* (citing *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990)). Accordingly, Defendants may file a new motion for summary judgment, directed to the issue of qualified immunity, within ninety (90) days of the date of entry hereof.

### IV. Conclusion

Defendants' Motion for Summary (ECF No. 53) will be DENIED. Defendants may file a new motion for summary judgment directed to the issue of qualified immunity within ninety (90) days of the date of entry hereof. Additionally, the action will be REFERRED to the Honorable David J. Novak, United States Magistrate Judge, for settlement. Counsel shall abide by whatever further instructions or requirements may be imposed by Magistrate Judge Novak.

An appropriate Order will accompany this Memorandum Opinion.

M. Hannah Lauck
United States District Judge

Date: AUG 30, 2018
Richmond, Virginia

11